**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIAMOND SANDS
APARTMENTS, LLC,

*Plaintiff - Appellant*,

v.

CLARK COUNTY NEVADA,

*Defendant - Appellee*.

No. 25-2884

D.C. No.
2:25-cv-00137-
ART-NJK

OPINION

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted November 21, 2025
San Jose, California

Filed January 16, 2026

Before: Mary M. Schroeder and Michelle T. Friedland,
Circuit Judges, and Karen E. Schreier, District Judge.*

Opinion by Judge Schreier

---

* The Honorable Karen E. Schreier, United States District Judge for the
District of South Dakota, sitting by designation.

# SUMMARY[**]

## Preliminary Injunction / Excessive Fines Clause

The panel affirmed the district court's denial of plaintiff Diamond Sands Apartments, LLC's motion for a preliminary injunction in Diamond Sands' suit alleging that a Clark County, Nevada ordinance prohibiting unlicensed short-term property rentals runs afoul of the Eighth Amendment's Excessive Fines Clause.

Diamond Sands, the owner and operator of a 360-unit apartment complex in Las Vegas, Nevada, argued that the County's enforcement scheme on its face and as applied unconstitutionally penalizes property owners for short-term rental activity conducted by tenants.

The panel held that the record demonstrated that the district court did not abuse its discretion in concluding that Diamond Sands failed to show serious questions that the County's fines of $4,000 were grossly disproportionate to the gravity of the underlying offense. The fines were not grossly disproportionate because (1) Diamond Sands had knowledge of the improper short-term rentals, failed to eliminate the violations, and therefore bore some culpability for the short-term rental ordinance violations; (2) the ordinance authorized alternative remedies, though the County ultimately chose to impose fines, which were on the low end of the authorized range; and (3) the ordinance was aimed at deterring harm to County residents from short term rentals and the County's legislative findings on the impact

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the harms supplied a rational basis for the fines imposed. Accordingly, Diamond Sands' as-applied challenge failed.

Diamond Sands' facial challenge to the Clark County ordinance failed because Damond Sands failed to demonstrate that the ordinance is unconstitutional in every conceivable application.

---

## COUNSEL

Adam R. Fulton (argued) and Steve Shevorski, Jennings & Fulton LTD, Las Vegas, Nevada, for Plaintiff-Appellant.

Timothy J. Allen (argued), Deputy District Attorney; Steven B. Wolfson, Clark County District Attorney; Clark County Office of the District Attorney, Las Vegas, Nevada; for Defendant-Appellee.

# OPINION

SCHREIER, District Judge

Clark County, Nevada enacted an ordinance that prohibits short-term property rentals without authorization. After determining that Diamond Sands Apartments, LLC violated that ordinance, Clark County imposed fines totaling $4,000 on the apartment complex. Diamond Sands sought declaratory and injunctive relief, arguing that Clark County's ordinance runs afoul of the Eighth Amendment's Excessive Fines Clause. The district court denied Diamond Sands' motion for a preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

## I.

## A.

Diamond Sands owns and operates a 360-unit apartment complex in Las Vegas, Nevada. Units are leased pursuant to long-term rental agreements that prohibit tenants from renting units to third parties without authorization.

Clark County received numerous complaints that certain units at Diamond Sands were being used as short-term rentals, including for loud parties. In response, the County's Code Enforcement Unit opened investigations into the identified units and spoke with Diamond Sands' property management about the complaints. In multiple instances, enforcement officers confirmed through in-person inspections and interviews with residents that the identified units had been rented for short-term stays through Airbnb.

Based on those investigations, the County issued notices of abatement to Diamond Sands for violating the County's short-term rental ordinances, which prohibit operating short-term rentals without proper authorization and permit the imposition of penalties—including fines between $1,000 and $10,000 per violation and potential criminal liability—against property owners. Clark Cnty. Code § 7.100.230(e)(2). After follow-up inspections confirmed continued violations, the County issued two administrative citations assessing $2,000 fines for each violation. The County identified additional violations but did not issue administrative citations in those instances. Diamond Sands paid one citation and disputed the other, which remains outstanding.

## B.

Diamond Sands filed suit in the United States District Court for the District of Nevada, asserting facial and as-applied challenges to Clark County's ordinances under the Eighth Amendment's Excessive Fines Clause. Diamond Sands argued that the County's enforcement scheme unconstitutionally penalizes property owners for short-term rental activity conducted by tenants and sought to enjoin Clark County from enforcing its ordinance.

Diamond Sands filed a motion for a preliminary injunction, which the district court denied, holding that Diamond Sands had failed to demonstrate a likelihood of success on the merits because the fines imposed were not grossly disproportionate to the gravity of the violations. Diamond Sands timely appealed.

## II.

"We review the denial of a preliminary injunction for abuse of discretion, but we review *de novo* the underlying issues of law." *Hubbard v. City of San Diego*, 139 F.4th 843, 849 (9th Cir. 2025) (quotation marks omitted). A district court abuses its discretion if it bases its decision "on an erroneous legal standard or on clearly erroneous factual findings." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (quotation marks omitted).

## III.

### A.

"A preliminary injunction is an extraordinary remedy that is never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party seeking relief must demonstrate that it is likely to succeed on the merits, that it is likely to suffer irreparable harm absent preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Id.* at 20.

We apply a sliding-scale approach to those factors, under which a plaintiff may receive a preliminary injunction by showing "serious questions going to the merits" "so long as the balance of hardships . . . 'tips sharply toward' the movant." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). However, "if a movant fails to meet the threshold inquiry of likelihood of success on the merits (or serious questions going to them), a court may decide to deny a preliminary injunction without considering the other factors." *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1126 (9th Cir. 2024). We hold that the district court did not err by denying Diamond Sands' motion, because

Diamond Sands failed to show serious questions going to the constitutionality of Clark County's ordinances under the Eighth Amendment.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed." U.S. Const. amend. VIII. In determining whether a punitive fine is excessive, we do not require "strict proportionality" between the underlying offense and the fine imposed.[1] *United States v. Bajakajian*, 524 U.S. 321, 336 (1998). Instead, our guiding question is whether the fine is "grossly disproportional to the gravity of the [] offense[.]" *Id.* at 337. Four factors inform our analysis of gross disproportionality: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) ("*Pimentel I*"). Diamond Sands argues that the district court erred in holding that the first, third, and fourth factors cut in favor of the fines' proportionality. Each argument is unavailing.

## B.

The first factor "typically look[s] to the violator's culpability." *Pimentel I*, 974 F.3d at 922. Diamond Sands argues that it was not the party causing the short-term rental violations, and that it therefore bears no meaningful culpability. The district court correctly rejected that

---

[1] Only punitive fines—those that "constitute[] punishment for an offense"—are subject to the Eighth Amendment's restrictions. *United States v. Mackby*, 261 F.3d 821, 829 (9th Cir. 2001). Clark County does not dispute that its ordinance is at least partly punitive and therefore falls within the scope of the Excessive Fines Clause.

premise. Property owners may bear a non-trivial degree of culpability for the misuse of their property by others. *See Towers v. City of Chicago*, 173 F.3d 619, 625 (7th Cir. 1999) (holding vehicle owners culpable for violations of a city ordinance where the owner "does not ensure that others with access to the vehicle do not place illegal items in it"). Even "benign actions may still result in some non-minimal degree of culpability." *Pimentel I*, 974 F.3d at 923; *see also id.* ("The Seventh Circuit's decision in *Towers v. City of Chicago* is instructive.").

Here, the district court correctly found that Diamond Sands' actions were not entirely benign. Contrary to Diamond Sands' representations that it was unaware of and not responsible for the short-term rental violations, Clark County provided Diamond Sands with notices of abatement informing Diamond Sands of the violations prior to the imposition of fines. At a minimum, because Diamond Sands had knowledge of the improper short-term rentals and failed to eliminate the violations, we conclude that the district court did not err in finding that Diamond Sands bore some culpability for the short-term rental ordinance violations.

## C.

Diamond Sands next argues that the third factor— alternative penalties—weighs in its favor because Clark County could have created "alternative requirements and penalties" on property owners or could have targeted the tenants rather than imposing fines on the owners. But the third factor asks whether the relevant legislature *has* authorized other penalties, not whether the legislature could have theoretically pursued an alternative enforcement regime.

Diamond Sands fails to recognize that Clark County's ordinance does contemplate alternative penalties: Clark County may issue misdemeanor citations, suspend or revoke short-term rental licenses, or audit a violator's financial records. Clark Cnty. Code § 7.100.230(f). Authorization of those alternative penalties demonstrates that the gravity of a violation of Clark County's short-term rental ordinances is more than minimal. *See Bajakajian*, 524 U.S. at 339 n.14 (1998) (holding that potential criminal liability demonstrated that violations of a statutory reporting requirement were not "trivial"). Ultimately, Clark County chose to impose fines, and it chose to impose a fine on the low end of the authorized range. Clark Cnty. Code § 7.100.230(d)(1)(I) (authorizing up to a $10,000 fine per violation). Accordingly, we conclude that the district court did not err in holding that this factor weighed in favor of proportionality.

**D.**

Finally, the fourth factor looks to the "extent of the harm caused by the violation," including both monetary and non-monetary harm. *Pimentel I*, 974 F.3d at 923-924. The district court properly concluded that the County suffers cognizable harm from unlicensed short-term rentals by property owners like Diamond Sands. Diamond Sands argues that the district court erred by not requiring Clark County to provide evidence of the extent of the harm. Specifically, Diamond Sands argues that our decision in *Pimentel v. City of Los Angeles*, 115 F.4th 1062 (9th Cir. 2024) ("*Pimentel II*"), requires that when governmental entities seek to justify a fine under a broad interest in deterrence, they must provide some specific evidence—such as a declaration saying that a city bore more enforcement costs or had to pay overtime for police—to show that a fine

is proportional to the alleged harm. Diamond Sands is incorrect.

In *Pimentel I*, we held that Los Angeles's $63 fine for parking violations was not grossly disproportionate. 974 F.3d at 925. In doing so, we did not require empirical proof of harm to the city, explaining that courts grant "substantial deference to the broad authority" of legislatures to set fines. *Id.* at 924 (quoting *Bajakajian*, 524 U.S. at 336). We expressly rejected the notion that municipalities must produce specific evidence to justify penalties and emphasized that strict proportionality is not required under the Excessive Fines Clause. *Id.*

*Pimentel II* did not retreat from that principle. In that case, we analyzed a separate fine—Los Angeles's $63 late payment fee, imposed for failure to pay the underlying $63 parking fine within 21 days—and reversed the district court's grant of summary judgment in favor of Los Angeles. 115 F.4th at 1068-69. We held that we could not "determine 'gross disproportionality' as a matter of law because the City offered no evidence to justify its $63 late fee." *Id*. at 1069. Although we recognized that "the [C]ity's interest in deterring nonpayment is legitimate," we noted that the plaintiffs had entered unrebutted testimony from government officials that the fine in question was "an arbitrary figure" that had been established solely for revenue-generating purposes, *id.* at 1069-70, and held that "the City's interest alone does not validate any fine amount that the City might arbitrarily impose," *id.* at 1069. Our reasoning turned on the fact that the City had failed to provide any "evidence that the penalty amount was actually tethered to the nature and extent of the harm caused by nonpayment." *Id.* at 1072 (emphasis omitted). We observed that if the City had entered "witness [testimony], a

declaration from a City official, or even a single piece of paper shedding light on the City's basis for the $63 late fee amount[,] the City would have likely prevailed. But the City provided zilch." *Id.* at 1071.

Diamond Sands argues that because Clark County similarly provided no evidence, the County cannot prevail. But Diamond Sands' reliance on *Pimentel II* is misplaced. First, in *Pimentel II*, we "stress[ed] that our holding [wa]s a narrow one," *id.* at 1074, and that "[s]o long as a government provides an unrebutted commonsense explanation or *some*—even relatively weak—evidence to justify its fine, it will likely prevail against an Excessive Fines Clause challenge," *id.* at 1069. The problem there was that, even at the summary judgment stage, the City had offered no explanation *whatsoever* for why nonpayment warranted a doubling of the initial fine. Second, *Pimentel II* dealt with a distinct kind of fine—one aimed at addressing an administrative problem, the late payment of a related fine— where the harms from a violation would be felt by the government itself rather than its citizens. In such a context, it makes more sense to require documentary evidence of harm to the government itself. But that is not the type of fine at issue here.

Clark County's ordinances are aimed at deterring harm to County residents in general, not just to the County government itself. In its ordinance, Clark County expressly articulated that unlicensed short-term rentals negatively impact the availability of affordable housing for county residents and increase public nuisances in the community from loud parties and the like. Clark Cnty. Code § 7.100.010. The County also explained that short-term rentals interfere with its ability to collect transient lodging taxes. *Id.* The impact of those harms falls not only on the

functions of the County government but also on the community directly, as evidenced from the numerous complaints from residents regarding disruptive parties at Diamond Sands. *See, e.g.*, *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1194 (9th Cir. 2024) (holding that when violations did not impact the community, "caus[ing] no harm beyond a technical lack of compliance," this factor weighed against proportionality), *cert. denied* 2025 WL 2906470 (U.S. Oct. 14, 2025); *Pimentel I*, 974 F.3d at 920 (recognizing that the relevant fine was aimed at "alleviat[ing] traffic" for the "Los Angelenos [who] sigh and despair when mired in traffic jams"); *Towers*, 173 F.3d at 625 (noting that the fine at issue aimed to deter "the spread of drugs and the use of firearms," which threatened public safety in general). Clark County's legislative findings supply a rational basis for the fines imposed.

Diamond Sands does not dispute that short-term rental violations negatively impact the County or present evidence to rebut the proportionality conclusion. Under these circumstances, and "[w]ithout material evidence provided by [Diamond Sands] to the contrary," the Eighth Amendment does not require Clark County to "commission quantitative analysis" to justify its fine penalty schedule. *Pimentel I*, 974 F.3d at 924. Thus, when compared to the harms Clark County identified, the imposed fines of $4,000 against Diamond Sands, weigh against a finding of gross disproportionality. *See id.* We conclude that the district court did not err in deciding that this factor weighed in favor of finding that the County's fines are proportional. As a result, on this record, we conclude that Diamond Sands' as-applied challenge fails to raise serious questions going to the constitutionality of the fines Clark County imposed.

**E.**

We conclude that Diamond Sands has not raised serious questions going to the facial constitutionality of Clark County's ordinances under the Eighth Amendment's Excessive Fines Clause. Diamond Sands argues that because the County could theoretically impose a $20,000 fine on a property owner who had no prior knowledge of any short-term rentals, the ordinance must be deemed facially unconstitutional. But that argument turns the facial inquiry on its head. Rather than showing that the ordinance could potentially be enforced unconstitutionally in one hypothetical application, Diamond Sands must demonstrate that it is "unconstitutional in *every* conceivable application." *Wolford v. Lopez*, 116 F.4th 959, 984 (9th Cir. 2024) (emphasis added) (quotation marks omitted). Because Diamond Sands cannot rely on "a worst-case analysis that may never occur" to demonstrate facial unconstitutionality, *Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 514 (1990), its facial challenge fails.

**IV.**

The record before us demonstrates that the district court did not abuse its discretion in concluding that Diamond Sands failed to show serious questions that the fines at issue are grossly disproportionate or that Clark County's ordinance is facially unconstitutional. For the foregoing reasons, the district court's denial of Diamond Sands' motion for a preliminary injunction is **AFFIRMED**.